# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DAVID TAYBRON, | ) | |
| Plaintiff, | ) | 16 C 4564 |
| v. | ) | Judge John Z. Lee |
| SERGEANT BAKER, LIEUTENANT SHAW, S.A. GODINEZ, and UNKNOWN ILLINOIS DEPARTMENT OF CORRECTIONS EMPLOYEES, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Taybron, an inmate at Pontiac Correctional Center, brought this action under 42 U.S.C. § 1983 against Defendants Sergeant Baker, Lieutenant Shaw, and unknown Illinois Department of Corrections ("IDOC") employees. Taybron's claims arise out of an incident at Stateville Northern Reception and Classification Center ("Stateville NRC") in which he alleges he was beaten by IDOC officers and left alone in a cell without receiving medical attention. Baker and Shaw (collectively, "Defendants") have moved for partial summary judgment.[1] For the reasons set forth below, the motion is denied in part and granted in part.

---

[1] In addition, Defendant S.A. Godinez has moved for summary judgment on all counts, asserting that he did not work for the IDOC at the time of the alleged incident. Defs.' Mem. Supp. at 2, ECF No. 83. Taybron agrees that Godinez was not involved in the incident and is entitled to summary judgment on all counts. Pl.'s Mem. Opp. at 4, 13, ECF No. 89. The Court therefore grants summary judgment to Defendant Godinez on all counts.

**Factual Background**[2]

Plaintiff Taybron is an inmate in the custody of the IDOC. Defs.' LR 56.1(a)(3) Stmt. ¶ 1, ECF No. 84. At the time of the incident, Taybron resided at Stateville NRC, where Defendants Baker and Shaw were employed as correctional officers. *Id*. ¶¶ 2, 5, 9.

On March 31, 2015, an unidentified inmate housed in Stateville NRC Unit P threw feces from his cell onto the gallery wall. *Id.* ¶ 15; Taybron Dep. at 104:21–23, ECF No. 84-1. At that time, Taybron was housed in Unit P. Defs.' LR 56.1(a)(3) Stmt. ¶ 4. Neither party asserts that Taybron was responsible for throwing the feces.

Taybron testified that Baker and Shaw entered his cell immediately after the feces were thrown and told him that they would "beat [him] to death" if anything else came "flying up out of the cell." Defs.' LR 56.1(a)(3) Stmt. ¶ 16; Taybron Dep. at 114:16–19, 116:16–23, 121:2–8. Baker and Shaw maintain that they were not aware of or involved in the feces-throwing incident and did not interact with Taybron with respect to the incident. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 27, 30, 35–36.

Later that day, an unidentified inmate in Unit P sprayed an officer from inside his cell with an unknown liquid. *Id.* ¶ 17; Taybron Dep. at 107:11-14. Eleven officers then gathered outside of Taybron's cell, after which several of the officers entered the cell. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 1, ECF No. 90 (citing Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. A-1, Unit P1 High Video 1 at 20:23:26–24:36, ECF No. 90-1). Those actions by the officers are captured on video. *See* Unit P1 High Video 1 at 20:23:26–24:36.

The parties offer conflicting deposition testimony as to what occurred when the officers entered Taybron's cell; the interior of his cell was not captured on video. Taybron testified that

---

[2] The following facts are not in material dispute except where otherwise noted.

he was "swarmed on [*sic*] with . . . punches and kicks" by numerous officers, including Baker and Shaw; choked several times when officers applied their boots to his neck; and lost consciousness approximately three times. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 3; Taybron Dep. at 150:21, 160:12–16, 164:2–7, 21–23.

For his part, Baker testified that upon arriving at Taybron's cell, he saw Taybron standing, uninjured, inside his cell. Defs.' LR 56.1(a)(3) Stmt., Ex. 2, Baker Dep. at 21:14–15, 26:7–11, ECF No. 84-2. According to Baker, he then proceeded to escort Taybron out of his cell. *Id*. at 22:7–8; Defs.' LR 56.1(a)(3) Stmt. ¶ 30. As for Shaw, he testified that he was "the last or one of the last" officers to arrive at Unit P. Defs.' LR 56.1(a)(3) Stmt., Ex. 3, Shaw Dep. at 35:8–9, ECF No. 84-3. Shaw maintained that by the time he arrived, Taybron was already outside of his cell, near the stairs. *Id*. at 34:12–16. Shaw further stated that he never entered Taybron's cell, Defs.' LR 56.1(a)(3) Stmt. ¶ 32, and that the only physical contact he had with Taybron consisted of escorting him from his cell in Unit P to a cell in Unit B. Shaw Dep. at 45:2–7.

The parties agree that several officers, including Baker and Shaw, transported Taybron down several flights of stairs and out of Unit P. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 5–6, 10 (citing Pl.'s LR 56.1(b)(3)(C) Stmt., Exs. A-2, Unit P1 High Video 2 at 20:26:17–44, and A-3, Unit P2 Low Video at 20:26:49–27:04, ECF No. 90-1). This process is captured in part on video, though much of it is unclear. *See* Unit P1 High Video 2 at 20:26:17–44, Unit P2 Low Video at 20:26:49–27:04. Taybron was then taken to a cell in Unit B, a segregation unit. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 15; Defs.' LR 56.1(a)(3) Stmt. ¶ 20. While transporting Taybron to the Unit B cell, Shaw and three other officers dragged Taybron forward on his knees. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 11–12 (citing Pl.'s LR 56.1(b)(3)(C) Stmt., Exs. A-4, OP Interlock Video at 20:27:09, and A-5, BC Interlock Video at 20:28:48–51, ECF No. 90-1). Taybron then fell forward, hitting his face on the

ground.  Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 13 (citing BC Interlock Video at 20:28:52).  The parties dispute whether the fall, which is not clearly visible on the video, was caused by the officers dropping Taybron, Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 13, or by Taybron "jerking away," slipping, and falling.  Shaw Dep. at 22:20–23.

Shaw testified that by the time Taybron arrived at the Unit B cell, the only injury Taybron had sustained was a "small amount of blood on his bottom lip." *Id*. at 24:3–4.  In addition, Shaw asserted that Taybron's teeth were "fully intact." *Id*. at 24:6.  Baker, on the other hand, testified that he did not see any bleeding, cuts, or bruises on Taybron when Taybron arrived in Unit B. Baker Dep. at 41:4–8.

In contrast, Taybron testified that, by the time he was taken to the Unit B cell, he had sustained severe lacerations on his wrists and mouth, contusions on his head, had broken two front teeth, and was bleeding from his mouth, nose, wrists, and the back of his head.  Taybron Dep. at 6:1–4, 13:10–15:5, 19:4–12, 218:22–219:20.  According to Taybron, his two front teeth had been "knocked out" and were "broken up into [his] gums." *Id*. at 5:24, 37:23.  He further stated that he had three to four deep gashes on each wrist, *id*. at 22:12–16—which are still faintly visible, *id*. at 20:6–8—caused by handcuffs so tight they caused him to black out several times. *Id*. at 12:13–15.  He also reported sustaining large gashes around his mouth, caused in part by the impact of his teeth against his lips, and numerous contusions covering the back and sides of his head. *Id*. at 13:13–15, 15:1–5.

The parties further dispute how quickly Taybron received medical attention following his transfer to Unit B.  Shaw stated that he contacted a medical technician immediately upon arriving at Unit B.  Shaw Dep. at 24:21–23.  According to Shaw, the technician came to the Unit B cell, inspected and cleaned Taybron's mouth, and treated the cut on his lip. *Id*. at 25:7–9.  Shaw further

4

stated that the medical technician asked Taybron if he had any other injuries, to which Taybron responded he did not. *Id*. at 25:9–11.

In contrast, Taybron testified that he was left alone in the Unit B cell with blood still covering his face, head, and hands. Taybron Dep. at 221:20–222:4. According to Taybron, he was not seen by the health care unit until the following day, *id*. at 222:23–24, at which time he was given "A&D ointment." *Id*. at 27:22–28:1.

Two days after the incident, Taybron was transferred to the Pontiac Correctional Center ("Pontiac"). *Id*. at 9:15–16. According to Taybron, he informed various Pontiac employees that his mouth was too swollen and painful to eat. *Id*. at 9:17–19, 11:3–6. Within approximately one week of arriving at Pontiac, he was seen by a dentist, who took x-rays of his teeth and determined that both front teeth should be removed. *Id*. at 9:20–24, 35:15–16; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 19.[3] The teeth were removed shortly thereafter. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 20; Taybron Dep. at 36:8–9. 37:21–38:1.

For the following 45 to 60 days, Taybron ate only soft foods to avoid increasing his pain. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 21; Taybron Dep. at 38:2–13. In addition, Taybron described waking up two to three times per night for up to a month after arriving at Pontiac due to intense pain in his mouth and wrists. Taybron Dep. at 30:10–12, 33:12, 34:8–15.

---

[3] Taybron supports several of his statements of fact concerning the medical and dental care he received at Stateville NRC and Pontiac with citations to a grievance he had submitted to Pontiac on May 7, 2015, in which he provided a detailed account of the events at issue in this lawsuit. *See* LR 56.1(b)(3)(C) Stmt. ¶¶ 17, 19–20. Defendants maintain that the contents of Taybron's grievance are hearsay, rendering the factual assertions unsupported by admissible evidence. Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 19–20. But while the grievance is indeed hearsay, the factual assertions at issue are supported by Taybron's deposition testimony. *See* Taybron Dep. at 6:8–11, 9:20–24, 35:15–16, 36:8–9, 37:21–38:1.

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

## Analysis

Taybron's Fourth Amended Complaint includes the following counts: excessive force under § 1983 (Count I); failure to intervene under § 1983 (Count II); conspiracy to deprive constitutional rights under § 1983 (Count III); intentional infliction of emotional distress (Count IV); violation of due process under § 1983 (Count V); and violation of the Eighth Amendment under § 1983 (Count VI). Defendants move for summary judgment on Counts III, V, and VI.

## I. Unknown IDOC Employee Defendants

As a preliminary matter, Taybron asserts Counts III, V, and VI against "all Defendants." 4th Am. Compl. at 8, 10, 11, ECF No. 73. The only remaining Defendants in this case are Shaw, Baker, and "unknown IDOC employees."[4] *Id.* at 1.

A plaintiff's "[f]ailure to identify a defendant during discovery, and the consequential failure to serve that defendant with process, requires dismissal of the unknown and unnamed defendant." *Elder v. Cook Cty. Sheriff's Office*, No. 14-C-6495, 2016 WL 861237, at *3 (N.D. Ill. Mar. 7, 2016) (citation omitted); *see also Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007) (finding that the district court should have dismissed a defendant *sua sponte* at summary judgment due to the plaintiff's "failure to identify th[e] defendant and the lack of any record that [the defendant] was served with process").

Here, discovery has closed, and Taybron has failed to identify or serve the unknown IDOC employees. As such, the Court *sua sponte* dismisses the unknown IDOC employees from this case. *See Williams*, 509 F.3d at 402. As a result, the only remaining defendants are Baker and Shaw.

## II. Conspiracy Claim (Count III)

Defendants move for summary judgment as to the conspiracy claim, arguing that Taybron has failed to present evidence from which a reasonable jury could find that they had entered into an agreement to use excessive force against him.

"A civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means.' To establish conspiracy liability

---

[4] Taybron's Fourth Amended Complaint also names Stateville Correctional Center Assistant Warden of Programs Edwards as a Defendant. The Court granted Taybron's oral motion to dismiss Defendant Edwards on October 11, 2016. ECF No. 42.

7

in a § 1983 claim, the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (quoting *Scherer v. Balkema*, 840 F.2d 437, 441–42 (7th Cir. 1988)). "Because conspiracies are often carried out clandestinely and direct evidence is rarely available, plaintiffs can use circumstantial evidence to establish a conspiracy, but such evidence cannot be speculative." *Id*. at 511 (citing *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003)).

As an initial matter, Defendants do not contend (for the purposes of summary judgment, at least) that Taybron has failed to offer evidence from which a reasonable jury could find that they committed overt acts depriving Taybron of his Eighth Amendment rights. They argue only that Taybron has failed to present evidence from which a reasonable jury could find that they entered into an *agreement* to do so. Defs.' Mem. Supp. at 4–6, ECF No. 83. In response, Taybron contends that his testimony regarding Baker and Shaw's threats, coupled with the video footage from Stateville NRC's surveillance cameras, constitutes sufficient evidence of an agreement to preclude summary judgment. Pl.'s Mem. Opp. at 6–7, ECF No. 89.

Viewing the disputed facts in the record in Taybron's favor, the Court concludes that he has presented sufficient evidence for a reasonable jury to find that Shaw and Baker entered into an agreement to use excessive force against him. Taybron testified that Shaw and Baker entered his cell following the feces-throwing incident and threatened to "beat [him] to death" if any other material was ejected from his cell. Taybron Dep. at 114:16–19, 116:16–23, 121:2–8. According to Taybron's testimony, Baker and Shaw subsequently carried out this threat: when an officer was sprayed with an unidentified liquid from a cell near Taybron's, numerous officers—including Baker and Shaw—entered Taybron's cell and administered a severe beating. *Id*. at 150:21,

8

160:12–16, 164:2–7. Video evidence supports, in the very least, that many officers gathered outside Taybron's cell, that several officers entered his cell, and that Taybron was ultimately dragged, by several officers, from his cell to another location. *See* Unit P1 High Video 1 at 20:23:26–24:36; Unit P1 High Video 2 at 20:26:17–44; Unit P2 Low Video at 20:26:49–27:04; OP Interlock Video at 20:27:09; and BC Interlock Video at 20:28:48–51. Viewing this evidence and drawing all reasonable inferences in Taybron's favor, a reasonable jury could find that Shaw and Baker entered into an agreement to use excessive force against him.

The cases cited by Defendants do not mandate a different conclusion. In particular, Defendants' reliance on *Bentz v. Lindenberg* is misplaced. No. 3:15-CV-121-NJR-DGW, 2017 WL 1132597 (S.D. Ill. Mar. 27, 2017). In *Bentz*, an inmate brought a conspiracy claim against two correctional officers who had assaulted him. *Id*. at *2. While the inmate testified that both of the officers had individually threatened or gestured rudely to the plaintiff prior to the assault, he did not present any evidence that the officers had had "any interaction with one another" prior to the assault. *Id*. at *4. Here, however, Taybron has testified that Shaw and Baker jointly threatened to assault him prior to the alleged assault. Taybron Dep. at 114:16–19, 116:16–23, 121:2–8.

Defendants further argue that "no reasonable jury could find that Shaw and Baker agreed to use excessive force" because their testimony contradicts Taybron's. Defs.' Mem. Opp. at 6; Defs.' LR 56.1(a)(3) Stmt. ¶¶ 27, 30, 35–36. But the fact that the parties present conflicting testimony precludes summary judgment, rather than mandating it. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants.") (collecting cases).

Given these disputed facts, the existence of an agreement between Baker and Shaw to use excessive force against Taybron is a question of fact that a jury must resolve. Accordingly, the

9

Court denies Defendants' summary judgment motion as to Taybron's conspiracy claim (Count III).

## III. Eighth Amendment Cruel and Unusual Punishment Claim (Count VI)

Defendants also move to dismiss Taybron's claim for cruel and unusual punishment under the Eighth Amendment (Count VI), contending that it is duplicative of his Eighth Amendment excessive force claim (Count I). 4th Am. Compl. at 6–7, 11; Defs.' Mem. Supp. at 8–9. In response, Taybron asserts that these claims are not duplicative, because Count VI includes a claim for deliberate indifference to medical needs. Pl.'s Mem. Opp. at 13.[5] Defendants reply that Taybron is impermissibly asserting a deliberate indifference claim for the first time at summary judgment. Defs.' Reply at 4, ECF No. 103.

### A. Forfeiture of Deliberate Indifference Claim

"The Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories. Accordingly, when a plaintiff does plead legal theories, it can later alter those theories," even at summary judgment—at the court's discretion. *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017) (quoting *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996) and collecting cases). However, "[a]n attempt to alter the *factual* basis of a claim at summary judgment may amount to an [impermissible] attempt to amend the complaint." *Chessie*, 867 F.3d at 859 (citing *Whitaker v. Milwaukee Cty., Wis.*, 772 F.3d 802, 808 (7th Cir. 2014)) (emphasis added).

Based on these principles, the Seventh Circuit has articulated the following framework for determining whether arguments raised for the first time at summary judgment should be allowed

---

[5] Taybron also argues that the counts are not duplicative because Count I is asserted against Baker and Shaw, whereas Count VI is asserted against all defendants. However, as the Court has dismissed the unknown IDOC employees, Baker and Shaw are the only remaining defendants. Thus, this argument is moot.

10

to proceed. "When a new argument is made in summary judgment briefing, the correct first step is to consider whether it changes the complaint's factual theory, or just the legal theories [the] plaintiff has pursued so far. In the former situation, the plaintiff may be attempting in effect to amend its complaint, and the district court has discretion to deny the *de facto* amendment and to refuse to consider the new factual claims. In the latter, the court should consider the consequences of allowing the plaintiff's new theory." *Id*. at 860 (internal citations omitted). "As a general rule, district courts should not hold plaintiffs to their earlier legal theories unless the changes unfairly harm the defendant or the case's development—for example, by making it 'more costly or difficult' to defend the case, or by causing unreasonable delay," *id*. (quoting *Vidimos*, 99 F.3d at 222), or by causing "any unfair surprise." *Whitaker*, 772 F.3d at 809.

For example, in *Whitaker v. Milwaukee County, Wisconsin*, the plaintiff alleged facts in her complaint concerning the relationship between two defendants, arguing that one was liable for the other's actions under an agency theory of liability. 772 F.3d at 807. At summary judgment, the plaintiff abandoned her agency theory, arguing instead that the defendant was liable for the other's actions under a joint employer theory of liability. *Id*. The court found that the plaintiff's "alternative legal characterization of the factual relationship" between the two defendants did not present any "unfair surprise" and should have been allowed to proceed because both theories of liability were supported by "identical facts" that the plaintiff had alleged "from the beginning." *Id*. at 808–09; *see also Vidimos*, 99 F.3d at 222 (finding that the plaintiff's claim for promissory estoppel, raised for the first time at summary judgment, presented "no surprise" when the complaint "fairly breathes promissory estoppel . . . although [the complaint] does not mention the term—and did not have to" (citation omitted)).

Here, Taybron has consistently asserted facts that support a deliberate indifference claim. To prevail on a claim for deliberate indifference, an inmate must show that (1) he had an objectively serious medical need and (2) the defendant was subjectively aware of the inmate's medical need but consciously disregarded it. *Farmer v. Brennan*, 511 U.S. 825, 834, 837–38 (1994); *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

In his complaint, Taybron alleged that he had "blood dripping down his face" and had sustained two broken teeth when he was "left alone and not given any medical attention." 4th Am. Compl. ¶¶ 20, 22, 30. First, these factual assertions allege objectively serious medical conditions, a standard encompassing conditions that have been "diagnosed by a physician as mandating treatment," *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)), or that a "reasonable doctor or patient would find important and worthy of comment or treatment," *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008). Second, they allege the officers' subjective deliberate indifference, which "can arise by a failure to provide prompt treatment for serious medical needs" of which an officer was aware. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). Taybron's complaint therefore "laid the foundation" for a deliberate indifference claim. *See Vidimos*, 99 F.3d at 222.

That said, although Taybron may not have altered the factual underpinnings of his complaint, *see Chessie*, 867 F.3d at 860, the first time that he asserted a deliberate indifference claim was in his memorandum opposing summary judgment. *See* 4th Am. Compl. ¶¶ 56–60; Pl.'s Mem. Opp. at 13. Accordingly, the question is whether allowing Taybron to pursue this claim would "unfairly harm the defendant or the case's development." *Chessie*, 867 F.3d at 859. The Court concludes that it would not.

The complaint—which describes Taybron's severe injuries, lasting pain, and lack of medical attention—"fairly breathes" a claim based upon deliberate indifference to medical needs. 4th Am. Compl. ¶¶ 1, 20, 22–23, 30; *see Vidimos*, 99 F.3d at 222. Defendants thus should not be surprised that the claim is now asserted explicitly. *See id*. Indeed, Defendants' counsel questioned Taybron extensively regarding information relevant to a deliberate indifference claim, such as the severity of, treatment for, and residual effects of Taybron's injuries. *See* Taybron Dep. at 5:20–23, 9:4–15:13, 16:16–44:10, 202:15–207:4, 218:11–223:5. Nor have Defendants pointed to any ways in which they would be unfairly prejudiced by allowing the claim to proceed at this juncture. *See* Defs.' Reply at 3–4. As such, the Court construes Count VI as including a claim for deliberate indifference to medical needs. *See Vidimos*, 99 F.3d at 222; *Whitaker*, 772 F.3d at 808.

B.     **Duplicative Claims**

Claims are considered duplicative if they (1) involve the same operative facts, (2) involve the same injury, and (3) require proof of essentially the same elements. *Barrow v. Blouin*, 38 F. Supp. 3d 916, 920 (N.D. Ill. 2014); *Beringer v. Standard Parking O'Hare Joint Venture*, 2008 WL 4890501, at *4–5 (N.D. Ill. Nov. 12, 2008).

To the extent that Taybron is asserting an excessive force claim in Count VI, that claim is needlessly duplicative of Count I. There, Taybron alleged that Defendants beat him in his cell and injured him as they transported him to Unit B, resulting in "severe pain, physical injury, mental suffering, anguish and humiliation, and fear." 4th Am. Compl. at 6–7; Pl.'s Mem. Opp. at 12. In Count VI, Taybron asserts a claim for "cruel and unusual punishment" founded on Baker's and Shaw's actions [6] during Taybron's transfer to Unit B and alleging similar physical and

---

[6]     Taybron contends that his Count VI claims derive from "the actions of all Defendants," rather than those of Baker and Shaw alone. Pl.'s Mem. Opp. at 13. At this point, however, Baker and Shaw are the only remaining Defendants.

psychological injuries as are alleged in Count I. 4th Am. Compl. at 11–12; Pl.'s Mem. Opp. at 13. Insofar as this claim alleges excessive force, it necessarily requires the same elements as Taybron's excessive force claim in Count I. Thus, as the excessive force claims in Count I and Count VI share the same operative facts, injuries, and elements, the Court grants summary judgment on any excessive force claim asserted as part of Count VI. *See Barrow*, 38 F. Supp. 3d at 920.

Count VI is not duplicative of Count I's excessive force claim, however, to the extent that the former includes a claim for deliberate indifference to medical needs. The elements of these two claims are entirely distinct: while excessive force claims require proof that "force was applied . . . maliciously and sadistically for the very purpose of causing harm," *Fillmore v. Page*, 358 F.3d 496, 503 (7th Cir. 2004) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)), claims for deliberate indifference to medical needs require the plaintiff to establish that (1) he had an objectively serious medical need and (2) the defendant was subjectively aware of the plaintiff's medical need but consciously disregarded it. *Farmer*, 511 U.S. at 834, 837–38; *Roe*, 631 F.3d at 857. Consequently, the Court denies Defendants' motion for summary judgment with respect to Taybron's Count VI deliberate indifference claim.

### IV. Due Process Claims (Count V)

In addition, Taybron brings excessive force and deliberate indifference claims under the due process clause of the Fourteenth Amendment. Pl.'s Mem. Opp. at 8–10. Defendants move for summary judgment on these claims, arguing that Taybron's claim for excessive force is properly brought under the Eighth Amendment, rather than the due process clause, and that Taybron's failure to explicitly raise a deliberate indifference claim in his complaint bars him from asserting such a claim at summary judgment. Defs.' Mem. Supp. at 7–8; Defs.' Reply at 4.

"[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that

specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *accord Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) ("[C]onstitutional claims must be addressed under the most applicable provision." (citing *Graham*, 490 U.S. at 395)).

The Eighth Amendment "serves as the primary source" of protection for convicted prisoners against excessive force. *Graham*, 490 U.S. at 395 n.10 (1989). As such, "[a]ny protection that 'substantive due process' affords convicted prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment." *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The Eighth Amendment is also the source for prisoners' protection against deliberate indifference to serious medical needs. *See Chapman*, 241 F.3d at 845; *Estelle*, 429 U.S. at 104 ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

As the Eighth Amendment provides a direct safeguard to convicted prisoners against excessive force and denial of medical treatment, Taybron's claims for excessive force and deliberate indifference to medical needs must be analyzed under the Eighth Amendment alone. *See Graham*, 490 U.S. at 395; *Whitley*, 475 U.S. at 327; *Estelle*, 429 U.S. at 101, 104. Thus, Defendants are entitled to summary judgment on Taybron's claims for excessive force and denial of medical treatment brought under the due process clause (Count V).[7]

---

[7] Because the Court finds that Taybron cannot bring either a deliberate indifference claim or an excessive force claim under the due process clause, the Court declines to address Defendants' argument that Taybron is barred from raising a deliberate indifference claim under the due process clause for the first time at summary judgment.

**Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment [82] is granted in part and denied in part. The motion is granted in full as to Defendant S.A. Godinez. Further, Defendants Baker and Shaw's motion is granted as to Count V and the excessive force claim in Count VI. Defendants Baker and Shaw's motion is denied as to Count III and the deliberate indifference claim in Count VI. The Court further dismisses the Unknown IDOC Employees as Defendants from the case.

The following claims remain for trial against Baker and Shaw: excessive force under § 1983 (Count I); failure to intervene under § 1983 (Count II); conspiracy to deprive constitutional rights under § 1983 (Count III); intentional infliction of emotional distress (Count IV); and deliberate indifference under § 1983 (Count VI). A status hearing will be held on 10/3/18 at 9:00 a.m., at which time the parties should be prepared to set deadlines for pretrial filings, a date for the pretrial conference, and a date for trial.


**IT IS SO ORDERED.**        ENTERED   9/19/18

_____
**John Z. Lee**
**United States District Judge**